IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PINETREE VILLAGE LLC,          :
                               :     Case No. 2:24-cv-1950
                               :
         Plaintiff,            :     JUDGE ALGENON L. MARBLEY
                               :     Magistrate Judge Chelsea M. Vascura
     v.                        :
                               :
GREATER NEW YORK INSURANCE     :
COMPANIES,                     :
                               :
         Defendants.           :

## OPINION & ORDER

This matter is before this Court on Plaintiff Pinetree Village LLC's Motion to Compel Appraisal and Stay Litigation. (ECF No. 19). For the reasons set forth below, this Court **GRANTS** the Motion.

## I.        BACKGROUND

Plaintiff, Pinetree Village LLC ("Pinetree") is a non-profit limited liability corporation operating an apartment complex consisting of multiple buildings located at 3136 Marion Place, Columbus, Ohio 43227. (ECF No. 2). From July 5, 2022, to July 5, 2023, Pinetree maintained an insurance policy ("Policy") with Defendant, Greater New York Mutual Insurance Company ("GNY"). (*Id*. at 2.; ECF No. 24 at 1). It is alleged that on March 25, 2023, Plaintiff's property experienced a severe wind and hail storm that caused substantial damage to the property roofs. (*Id*.) Plaintiff subsequently submitted a claim for the sustained damage. (*Id*.). GNY assigned an adjuster for the claim and conducted a loss investigation in which it determined that the amount of loss suffered by Pinetree amounted to $46,119.38. (*Id*.). Plaintiff, however, contends the amount of loss suffered amounts to $537,710.06. (*Id*.).

The Policy issued by GNY provides coverage for physical loss or damage to a covered property. (ECF No. 19 at 3). Neither party disputes that damage caused by hail or wind is covered under the Policy. (ECF Nos. 19 at 3-4; 24 at 6-7). Excluded from coverage is loss or damage resulting from inadequate repairs or deterioration. (ECF No. 24 at 2-3). Pursuant to the Policy, if an agreement arises regarding the value of the property or the ***amount of loss***, either party may make a written demand for the appraisal of the loss. (ECF No. 19 at 4). The Policy provides:

2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(ECF No. 24 at 4).

On March 21, 2024, Pinetree alleges it demanded an appraisal pursuant to the Policy, but GNY refused to comply (ECF No. 19 at 4). On the same day, Pinetree filed a complaint alleging breach of contract and seeking a declaratory judgment. (ECF No. 2). Defendant, GNY, responded that while the Parties agree the Policy was in effect during the relevant time period, and that Pinetree suffered damage covered under the policy, the outlined appraisal process does not apply

2

because it will not solve the core issue of whether GNY must provide coverage for the replacement of an entire roof due to an alleged "mismatch" of shingles. (ECF No. 24 at 1-3). Specifically, GNY asserts that Pinetree impermissibly seeks to use the appraisal process to solve a legal issue which should be left to the courts (*Id.* at 2-3).

GNY contends that since Pinetree seeks replacement of the entire roofs on their damaged buildings due to the discontinuation of the original property shingles and the lack of a suitable match to the original shingles, there is not a dispute over "the amount of loss." (*Id.* at 2). Rather, Defendants allege "the dispute is over the coverage afforded to the damaged portions of the roof" and whether the damaged roofs must be entirely replaced to ensure a "reasonable comparable appearance" pursuant to Ohio Admin. Code § 3901-1-54(I)(1)(b). (*Id.* at 7).

Since GNY has refused to participate in the policy appraisal process, Pinetree seeks to compel appraisal and stay the litigation pending the decision of an appraisal panel. This matter is now ripe for this Court's review.

## II.    LAW AND ANALYSIS

Appraisal provisions are meant to bypass litigation and promote judicial efficiency by providing a "plain, speedy, an inexpensive determination of the extent of loss…" *Saba v. Homeland Ins. Co, of Am.*, 112 N.E.2d 1, 3 (Ohio 1953). Further, Ohio Courts have found appraisal clauses to be an "integral part of the body of each policy" and enforceable just as any other "bargained-for contractual right." *See id.* at 4; *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, 2022 WL 7178548, at *2 (S.D. Ohio Sept. 22, 2022). In analyzing these provisions, this Court has found on multiple occasions that where parties fail to define "amount of loss," appraisers may consider the cause of damages. *See A Step Above Daycare*

*Acad., Inc. v. W. Bend Mut. Ins. Co.,* 2024 WL 4556114, at *2 (N.D. Ohio Oct. 23, 2024); *Stonebridge*, 2022 WL 7178548, at *8 (S.D. Ohio Sept. 22, 2022).

Additionally, in *Westview Vill. v. State Farm Fire & Cas. Co.*, the court opined that while courts are to decide legal questions about "categories of coverage," the extent of damage caused by a covered event is a question of fact. 2022 WL 3584263, at *4 (N.D. Ohio Aug. 22, 2022) (finding that appraisal was warranted where parties agreed that the policy covered storm damage, but not about the extent of storm damage). Thus, "[a] dispute over whether a storm caused property damage is a factual disagreement on the extent of loss (whether significant, minimal, or none) and that dispute should be resolved by an appraisal panel." *Village at Blacklick Creek Condominium Assn. v. Greater New York Ins. Co.*, 765 F.Supp.3d 698, 701 (S.D. Ohio 2025).

Here, Pinetree seeks to resolve: 1) what damage was caused by the storm; 2) what repairs are necessary to restore the property; and 3) how much the repairs will cost. (ECF No. 19 at 8). The parties agree that a weather-related event caused damage to the Pinetree Village property roofs, and that the Policy covers such events. (ECF Nos. 19 at 3-4; 24 at 6-7). Pinetree, however, asserts the amount of loss amounts to $537,710.06, whereas GNY asserts the amount of loss is $46, 119.38. (ECF No. 19 at 4). Simply stated, the parties disagree as to the amount of loss.

GNY, however, contends that Pinetree seeks to use the appraisal process to circumvent having this Court determine the legal issue of whether the entire roof must be replaced to ensure a "reasonable comparable appearance" pursuant to Ohio Admin. Code § 3901-1-54(I)(1)(b) ("When an interior or exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a reasonably comparable appearance.") (ECF No. 24 at 4-5). Moreover, GNY alleges that Pinetree seeks to premise its claims on § 3901-1-54(I)(1)(b) as a

4

private cause of action. This Court finds that Pinetree's additional inquiry of whether GNY must provide repair that is "comparable in appearance" is not dispositive as to its contentions over the amount of loss. Nor does this Court subscribe to the view that recognition of repair standards, as outlined in the Code, amount to asserting an independent cause of action.

*Cinnamon Ridge Condominium Assn., Inc. v. State Farm Fire & Cas. Co.*, 734 F.Supp.3d 744 (S.D. Ohio 2024*)* is instructive here. In *Cinnamon Ridge*, the parties disputed the cost of replacing damaged shingles with matching shingles and assessed whether the entire roof needed replaced. *Id*. at 747-748. Acknowledging that a determination as to the applicability of Ohio Admin. Code § 3901-1-54(I)(1)(b) is a legal question, the court in *Cinnamon Ridge* ordered a two-fold appraisal process. *See id*. at 748. Specifically, the court ordered the parties to conduct an appraisal that "separately calculate[s] and identif[ies] disputed costs – including[:] [(1)] damaged property[,] as well as [(2)] undamaged property whose replacement Plaintiff may claim if necessary for appearance purposes – so that the Court can either include or exclude them once it has determined whether the policy provides coverage for them." *Id.*

Similarly, this Court finds that there is a distinct dispute as to the amount of loss that can be separated from a determination of the extent of coverage required under the Policy in this matter. GNY asserts that Pinetree's property has suffered prior weather-related events and deterioration distinct from the event at issue here. (ECF No. 24 at 2, 7). Thus, this Court finds that an appraisal panel is well equipped to make determinations as to the amount of damage, the source(s) of such damage, and the necessary repairs.

GNY relies on *Olson v. State Farm Fire & Cas. Co.*, 2024 WL 4343033 (S.D. Ohio Sept. 30, 2024) to assert that the dispute at issue here is not about loss but merely turns on a question of legal interpretation. (ECF No. 24 at 8). In *Olson*, the court opined that "[w]hat the parties

disagree about is whether ... the Policy would require a complete roof replacement so as to comply with Ohio law. Resolving that disagreement necessarily asks a question of law. Namely, does the Policy require State Farm to provide a roof replacement to create a 'reasonably comparable appearance' in compliance with Ohio law? Answering that question ... is not resolvable by an appraisal because it regards policy interpretation." *Olson*, 2024 WL 4343033, at *4.

Notably, the *Olson* court did not reject the reasoning of *Cinnamon Ridge*, but rather opined the analysis was ill suited for that particular case at that point in time. *Id*. ("Since this is ultimately a question of law (calling for an interpretation of what constitutes compliance with the Ohio Administrative Code), this Court agrees with the Court in *Cinnamon Ridge* that an appraisal cannot resolve such a dispute and declines to adopt the appraisal order employed in that case, at least at this stage."). This Court, however, finds that resolving the amount of loss issue simultaneously with determining if additional repairs are necessary to achieve a reasonably comparable appearance supports the overall purpose of appraisal provisions and fosters judicial efficiency. *See A Step Above Daycare*, 2024 WL 4556114, at *3. Multiple other courts in the Southern District of Ohio have also supported this conclusion. *See Rsrvs. at Beavercreek Condo. Ass'n v. State Farm Fire & Cas. Co.,* 2023 WL 9183683, at *2 (S.D. Ohio Dec. 15, 2023); *Udom v. State Farm Fire & Cas. Co.*, 2024 U.S. Dist. LEXIS 98994, at *6 (S.D. Ohio June 4, 2024).

Further, *Olson* can be distinguished. In *Olson*, the court found no dispute given State Farm conceded that the roof damage was caused by the storm, and that Olson did not claim coverage for damage that State Farm attributed to wear and tear. *Olson*, 2024 WL 4343033, at *4. Here, GNY admits that the storm did cause damage to the roof but also asserts that its inspection revealed that some damage to the Pinetree roofs is due to the age of the shingles and other

weather-related events that occurred on different dates than the one in question. (ECF No. 24 at 2). Specifically, GNY contends that there are multiple causes for roof damage, and that it is not responsible for pre-existing damage. Thus, this Court finds it appropriate that an appraisal panel determine the extent of damages from the particular weather event at issue in this case.

More recently, in *A Step Above Daycare*, the Northern District of Ohio declined to delay appraisal as in *Olson*, but rather adopted a *Cinnamon Ridge*-like framework, finding that an appraisal panel can simultaneously address costs related to damaged property and undamaged property needing replacement for appearance purposes. 2024 WL 4556114, at *3.

This Court refuses to be forced into a false dichotomy. An appraisal panel can adequately and efficiently assess factual questions such as the amount and cause of loss without delving into legal questions. Further, an appraisal panel determining an amount necessary to maintain comparable appearances does not deprive this Court of its legal responsibility. Rather, the appraisal panel's determination will merely aid this Court with adequate facts, in the instance that this Court need to address whether the Policy requires GNY to comply with Ohio Admin. Code § 3901-1-54(I)(1)(b) when providing redress to Pinetree. *Id.*

### III.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion to Compel Appraisal and Stay this Case (ECF No. 19) as to all of Plaintiff's claims.

Defendant is **ORDERED** to proceed with the appraisal process as set forth in the Policy. The appraisal shall separately calculate and identify disputed costs—as to both damaged property and undamaged property whose replacement Plaintiff may claim if necessary for appearance purposes—so the Court can either include or exclude them once it has determined whether the policy provides coverage for them.

This litigation is **STAYED** pending completion of the appraisal process. The parties shall jointly file a status report, not to exceed five pages, every thirty days until this appraisal process is complete. Once the process is completed, the parties shall promptly notify the Court as to whether a live dispute remains in this case.

      **IT IS SO ORDERED**.

                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED:  October 23, 2025**